IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAWN T. WALKER,<br>    Plaintiff | :<br>:<br>: |
| v. | :    CIVIL ACTION NO. 20-CV-4460 |
| GEORGE LITTLE,[1] *et al.*,<br>    Defendants | :<br>:<br>: |

<u>MEMORANDUM</u>

**PRATTER, J.**                                                        FEBRUARY 24, 2022

Shawn T. Walker, a prisoner currently incarcerated at SCI-Phoenix, asserts civil rights violation pursuant to 42 U.S.C. § 1983. Mr. Walker challenges the manner in which legal mail was processed at the penal institution where he resides under a now-discontinued policy implemented by the Pennsylvania Department of Corrections ("DOC") in late 2018. Because it appears that Mr. Walker is unable to afford to pay the filing fee, the Court will grant his Motion for Leave to Proceed *In Forma Pauperis*. For the following reasons, Mr. Walker's Complaint will be dismissed with prejudice in part in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B). Mr. Walker will be permitted to proceed on one claim as set forth in this Memorandum, and the Court will direct service of the Complaint on Defendants with respect to that sole claim as detailed below.

---

[1] The Complaint in this action originally named John E. Wetzel as a defendant in his capacity as the Secretary of the Pennsylvania Department of Corrections. In October 2021, George Little became the Acting Secretary. *See* Department of Corrections, Secretary of Corrections, https://www.cor.pa.gov/Pages/Secretary%20of%20Corrections.aspx (last visited Feb. 9, 2022). Accordingly, the Court will substitute George Little for John E. Wetzel in this matter in accordance with Federal Rule of Civil Procedure 25(d).

I. **FACTUAL ALLEGATIONS AND HISTORY OF DOC MAIL POLICY[2]**

Mr. Walker brings this action "alleging Cruel and Unusual Punishment in violation of the Eighth Amendment" and asserting violations of his rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment. (ECF No. 1 ¶ 1.) Mr. Walker names the following Defendants in this case: (1) John E. Wetzel, the former Secretary of the Pennsylvania DOC, substituted for by George Little, Acting Secretary; (2) Kelly Long, the Mail Inspector Supervisor at SCI Phoenix; and SCI Phoenix Correctional Officers (3) J. Hall; (4) R. Williams III; (5) B.A. Gay; (6) J. Freeman; (7) D.K. Smith; (8) N. MacCain; (9) S. Swary; (10) J. Blume; (11) C. Foreman; (12) M. Sompel; (13) W.L. James; and (14) "John Doe and/or Jane Roe". (*Id.* ¶¶ 3-15, 23.) All Defendants are sued solely in their individual capacity. (*Id.*)

Mr. Walker alleges that "[b]etween September 1, 2018 and September 30, 2019, properly marked legal mail from courts and attorneys was mailed to SCI-Phoenix" and was specifically addressed to him, but that the Secretary of the DOC "authorized the Defendants to illegally seize [his] legal mail/property" in accordance with the DC-ADM 803 effective October 3, 2018 (hereinafter, "the 2018 Mail Policy"). (*Id.* ¶¶ 21-22.) Mr. Walker alleges that beginning on

---

[2] The factual allegations regarding the handling of Mr. Walker's legal mail are taken from Mr. Walker's Complaint. (*See* ECF No. 1.) Where the Court cites a page number rather than a paragraph number, the Court will adopt the pagination supplied to the Complaint by the CM/ECF docketing system. To the extent this Memorandum sets forth background information regarding the challenged DOC mail policy that Mr. Walker did not allege in his Complaint, the Court may properly consider court opinions from its sister courts and other public records in screening Mr. Walker's Complaint pursuant to § 1915(e)(2)(B). *See Harris v. U.S. Marshal Serv.*, No. 10-328, 2011 WL 3607833, at *2 (W.D. Pa. Apr. 6, 2011), *report and recommendation adopted as modified*, 2011 WL 3625136 (W.D. Pa. Aug. 15, 2011) ("In addition to the complaint, courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case in disposing of a motion to dismiss under Rule 12(b)(6), and hence, under the screening provisions of the PLRA.") (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994)).

approximately September 6, 2018, and continuing through April 4, 2019, various defendants improperly handled his legal mail on approximately twenty-five (25) separate occasions. (*See generally id.* ¶¶ 23-50.) Liberally construing his Complaint, it appears that Mr. Walker contends that in all 25 instances the defendants were acting pursuant to the 2018 Mail Policy.

These 25 instances can be broken down into two categories based on how Defendants allegedly processed Mr. Walker's legal mail. In a substantial majority of these instances – approximately 22 of them – Mr. Walker alleges that on a given date, the involved correctional officer defendant "refused to give Mr. Walker his legal mail from" a specific court, judge, or attorney, and instead, the correctional officer defendant "gave Mr. Walker photocopies of the enclosed documents" which were "made on a computerize [sic] photocopying machine." (*See, e.g., id.* ¶¶ 23, 30-50.) Mr. Walker further asserts that the Correctional Officer Defendant involved then "seized the envelope and the original documents that were enclosed in Mr. Walker's legal mail" and "did not give Mr. Walker a receipt for the seized legal mail/property." (*Id.* ¶¶ 23, 30-50.) Mr. Walker also contends that he "was not given a statement of reasons for the seizure," nor was he permitted "to be heard in opposition to the seizure."[3] (*Id.* ¶¶ 23, 30-50.)

---

[3] The specifics of these 22 instances are:

|   | **Instance Date** | **Defendant Involved** | **Source of Legal Mail Mr. Walker was Refused** | **¶ No.** |
|---|---|---|---|---|
| 1 | 09/06/2018 | John Doe/Jane Roe | Office of the Clerk for the United States District Court for the Eastern District of Pennsylvania | 23 |
| 2 | 10/03/2018 | MacCain | Superior Court of Pennsylvania | 30 |
| 3 | 10/09/2018 | Swary | Prothonotary of Montgomery County | 31 |
| 4 | 10/16/2018 | Blume | Shawn Nolan, Esq. | 32 |
| 5 | 11/16/2018 | MacCain | Office of the Clerk for the United States District Court for the Eastern District of Pennsylvania | 33 |

3

Mr. Walker acknowledges that in each of these instances he did receive photocopies of the legal mail at issue, but not the original documents. (*Id.* ¶¶ 23, 30-50.)

In the remaining three instances, Mr. Walker alleges that on the relevant date, the specified correctional officer defendant "had in [his or her] possession legal mail addressed to Mr. Walker" but "[i]nstead of giving Mr. Walker his legal mail[,]" the correctional officer defendant "wanted to keep Mr. Walker's legal mail" and "give Mr. Walker photocopies of his legal mail." (*Id.* ¶¶ 24, 26, 28.) In these three instances, the correctional officer defendant first "wanted Mr. Walker to sign for the photocopies of his legal mail" and when Mr. Walker "refused to sign the log book indicating that he received the legal mail sent to him[,]" the correctional officer defendant "did not give Mr. Walker anything and ordered Mr. Walker to return to his

| 6 | 11/27/2018 | Smith | Office of the Clerk for the United States District Court for the Eastern District of Pennsylvania | 34 |
| 7 | 12/11/2018 | MacCain | Eric Motylinski, Esq. | 35 |
| 8 | 12/22/2018 | Foreman | Eric Motylinski, Esq. | 36 |
| 9 | 01/08/2019 | Freeman | Honorable Gene E.K. Pratter | 37 |
| 10 | 01/11/2019 | Freeman | Supreme Court of Pennsylvania | 38 |
| 11 | 01/15/2019 | Sompel | Supreme Court of Pennsylvania | 39 |
| 12 | 01/23/2019 | Sompel | Cristi Charpentier, Esq. | 40 |
| 13 | 01/30/2019 | MacCain | Superior Court of Pennsylvania | 41 |
| 14 | 02/02/2019 | Sompel | Supreme Court of Pennsylvania | 42 |
| 15 | 02/09/2019 | Freeman | Supreme Court of Pennsylvania | 43 |
| 16 | 02/20/2019 | Freeman | Office of the Clerk for the United States District Court for the Eastern District of Pennsylvania | 44 |
| 17 | 03/07/2019 | Sompel | Office of the Clerk for the United States District Court for the Eastern District of Pennsylvania | 45 |
| 18 | 03/13/2019 | James | Supreme Court of Pennsylvania | 46 |
| 19 | 03/15/2019 | James | Samuel C. Stretton, Esq. | 47 |
| 20 | 03/19/2019 | Williams III | Prothonotary of Montgomery County | 48 |
| 21 | 03/28/2019 | MacCain | United States Court of Appeals for the Third Circuit | 49 |
| 22 | 04/04/2019 | Gay | Prothonotary of Montgomery County | 50 |

4

housing unit." (*Id.* ¶¶ 24, 26, 28.) Mr. Walker also asserts that in these three instances, Defendant Long was subsequently given back the legal mail at issue, and rather than ensuring Mr. Walker received it, Defendant Long returned Mr. Walker's legal mail to the sender. (*Id.* ¶¶ 25, 27, 29.)

Based on these allegations, Mr. Walker asserts § 1983 claims for: (1) violations of his First Amendment right to free speech; (2) violations of his rights under the Due Process Clause of the Fourteenth Amendment; and (3) violations of his right to be free from cruel and unusual punishment under the Eighth Amendment. (*Id.* ¶¶ 54-74.) Mr. Walker also asserts a claim for declaratory and injunctive relief asking the Court to determine that defendants' actions were unconstitutional and requiring defendants to give Mr. Walker his legal mail instead of returning it to the sender. (*Id.* ¶¶ 75-80.) Mr. Walker seeks nominal damages, compensatory damages in excess of $75,000, punitive damages, and costs of litigation. (*Id.* ¶¶ 62, 70, 74.)

Although Mr. Walker does not plead the specifics of the DOC mail policy that he seeks to challenge, Mr. Walker suggests that the Court may take "judicial notice of this policy as a matter of public record." *See Thompson v. Ferguson*, No. 19-4580, 2020 WL 7872629, at *2 (E.D. Pa. Dec. 31, 2020) (citing *Brock v. Corr. Emergency Response Team*, No. 18-3814, 2020 WL 668271, at *5 n.5 (E.D. Pa. Feb. 10, 2020)). The policy that Mr. Walker "complains of was a change to the DOC's Inmate Mail and Incoming Publications Policy, DC-ADM 803, effective October 3, 2018." *See Thompson*, 2020 WL 7872629, at *2. DC-ADM 803 defined incoming legal mail "as: (1) mail from an inmate's attorney that was hand delivered to a facility or identified with a control number, (2) mail from a court, and (3) mail from an elected or appointed federal, state, or local official who had sought and obtained a control number." *Id.* (citations and footnotes omitted.) Under this policy, incoming legal mail was handled as follows:

5

> (1) mail was to be opened and inspected for contraband in the inmate's presence; (2) mail was to be photocopied in the inmate's presence; (3) photocopies of the contents of mail were to be delivered to the inmate; (4) mail was to be noted on a legal mail log, which the inmate was to sign; (5) original mail was to be sealed in an opaque envelope secured with evidence tape in the inmate's presence; (6) the sealed envelope containing the original mail was to be deposited into a locked and secured receptacle provided by a vendor; (7) only the vendor was to be able to unlock or access the receptacle; (8) the activity of DOC staff and the inmate during this process were to be video recorded, but the contents of the mail was not to be recorded; (9) the vendor was to securely maintain the original mail and video recording for 45 days and then securely destroy the original mail and video recording; and (10) before the mail's destruction, an inmate could make a request to access the original mail, in accordance with this process, or to preserve the mail from destruction pursuant to a grievance.

*Id.* at *3. "[S]everal groups of attorneys representing Pennsylvania prisoners challenged the constitutionality of the new policy for handling incoming legal mail [shortly after it took effect]. Pursuant to a settlement agreement approved by the district court, the DOC changed its policy for handling inmates' incoming legal mail. The DOC [also] agreed to cease photocopying all legal mail as of April 5, 2019."[4] *Id.*

## II.   STANDARD OF REVIEW

The Court will grant Mr. Walker leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[5] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher*

---

[4] *See generally Pa. Institutional Law Project v. Wetzel*, Civ. A. No. 18-2100 (M.D. Pa. Oct. 30, 2018). The DC-ADM 803 effective October 3, 2018 is Exhibit 4 to the complaint in that matter. (*See* ECF No. 1-5.) The Order entered by the Honorable John E. Jones, III approving the Settlement Agreement was docketed on March 25, 2019. (*See* ECF No. 93.)

[5] However, because Mr. Walker is a prisoner, he is obliged to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

*v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Mr. Walker is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III. DISCUSSION

Mr. Walker claims there have been violations of his constitutional rights. The vehicle for pursuing federal constitutional claims in federal court is Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

7

### A. Mr. Walker's Request for Declaratory Relief

Declaratory relief is unavailable to adjudicate past conduct. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm."). To the extent that Count IV of Mr. Walker's Complaint seeks a declaration that his rights were violated in the past, this request for relief is improper and will be dismissed with prejudice.

### B. Mr. Walker's Eighth Amendment Cruel and Unusual Punishment Claims

Mr. Walker asserts in Count III that "Defendants acted pursuant to a policy and/or custom of refusing to give Mr. Walker his legal mail, seizing Mr. Walker's legal mail, and giving Mr. Walker photocopies of legal mail and seizing the original documents." (ECF No. 1 ¶ 73.) Mr. Walker claims that in so doing, Defendants "violated Mr. Walker's constitutional right against cruel and unusual punishment with wanton, outrageous, intentional and/or reckless disregard for the rights of Mr. Walker . . . by repeatedly and intentionally photocopying Mr. Walker's privilege [sic] legal mail and seizing the original legal documents." (*Id.* ¶ 74.) The Court understands Mr. Walker's Complaint as attempting to raise a claim that the handling of his legal mail under the 2018 Mail Policy amounted to a condition of his confinement that resulted

8

in unconstitutional punishment. The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Unconstitutional punishment under the Eighth Amendment typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Bell*, 441 U.S. at 538-39, 539 n.20). In general, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

To establish an Eighth Amendment violation based on the conditions of confinement, a prisoner must establish that prison officials' acts or omissions denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (stating that the Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials provide "humane conditions of confinement."). Such necessities include food, clothing, shelter, medical care, and

9

reasonable safety. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). A prisoner must also establish that the defendants acted with deliberate indifference. *Farmer*, 511 U.S. at 835. A claim based on mere negligence is insufficient to allege a plausible Eighth Amendment violation. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.").

Mr. Walker has not stated a plausible Eighth Amendment claim with respect to the photocopying and seizure of his legal mail pursuant to the 2018 Mail Policy because he has not alleged that Defendants' withholding of his original legal mail resulted in a deprivation of the minimal civilized measure of life's necessities. *See Blamey v. Allen*, No. 10-3470, 2011 WL 1047804, at *2 (E.D. Cal. Mar. 18, 2011) (concluding prisoner failed to state a cognizable Eighth Amendment claim because his "allegations that his legal mail was withheld for six months [did] not show a deprivation of the minimal civilized measure of life's necessities."); *see also Muir v. Wetzel*, No. 20-4459, 2021 WL 51443, at *2 (E.D. Pa. Jan. 5, 2021) (dismissing prisoner's Eighth Amendment cruel and unusual punishment claim as implausible where prisoner at SCI Phoenix challenged the same 2018 Mail Policy because prisoner's "allegations that he was not allowed to receive the originals of his legal mail [did] not raise a plausible claim that [he] was denied a life necessity, that prison officials consciously disregarded a serious risk to his health or safety, or that the deprivation was sufficiently serious to constitute unconstitutional punishment."); *cf. King v. Swing*, No. 4:18-2, 2019 WL 2341664, at *3 (E.D. Tenn. June 3, 2019) ("Plaintiff alleges mail is sometimes withheld for days or weeks. Delayed mail does not

10

rise to an extreme deprivation necessary to state an Eighth Amendment violation."). The Court understands that receiving mail can indeed be very important to someone who is incarcerated. *See Vega v. Mullen*, No. 16-cv-4620, 2018 WL 878802 (E.D. Pa. Feb. 14, 2018). However, in this instance the defendants' conduct was not of such a nature or type that one could say it was deliberately mean-spirited or meant to deprive Mr. Walker of a necessity of life. Accordingly, Count III will be dismissed for failure to state a claim pursuant to § 1915(e)(2)(B). Because it appears that any attempt to amend his Eighth Amendment cruel and unusual punishment claim would be futile because the alleged withholding of legal mail does not implicate any of Walker's basic life's necessities, so this claim will be dismissed with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that leave to amend claims dismissed on screening should generally be granted "unless amendment would be inequitable or futile.")

### C. Mr. Walker's Fourteenth Amendment Due Process Claim

In Count II, Mr. Walker asserts a due process claim. (*See* ECF No. 1 ¶¶ 63-70.) He contends that "[t]he right to correspond with courts and attorneys is a liberty interest protected by due process, and prisoners are entitled to notice when incoming legal mail is being returned to the sender, [along] with reasonable opportunity to protest the return of the privilege [sic] legal mail to the sender." (*Id.* ¶ 65.) Mr. Walker alleges that he "was not informed of privileged legal mail addressed to him [that] was in the Defendants' possession before it was returned to the sender." (*Id.* ¶ 66.) He also asserts that he was "not given a receipt for his legal mail/property after it was seized by the Defendants" and did not receive "a statement of reasons for the seizure, [or] . . . the right to be heard in opposition to the seizure." (*Id.* ¶¶ 68-69.)

To the extent Count II of the Complaint could be understood to allege a claim regarding the withholding of his legal mail under the 2018 Mail Policy at issue here, Mr. Walker's

Fourteenth Amendment claim is implausible. First, a prisoner in Pennsylvania cannot state a constitutional claim based on the loss of his property. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (*per curiam*) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property). Accordingly, to the extent Count II raises a property loss claim, it is not plausible and will be dismissed with prejudice pursuant to § 1915(e)(2)(B)(ii).

Count II may be intended to allege a claim that the 2018 Mail Policy infringed upon a liberty interest Mr. Walker has in corresponding by mail. In this regard, however, Mr. Walker has also failed to state a plausible claim. As the United States Court of Appeals for the Third Circuit has explained, "[s]tates may not deprive 'any person' of their liberty 'without due process of law.'" *Vogt*, 8 F.4th at 186 (citation omitted). "One such liberty, even for prisoners . . . , is the freedom to correspond by mail." *Id.* (citing *Procunier v. Martinez*, 416 U.S., 396, 418 (1974)). "[P]risons must provide 'minimum procedural safeguards' when they 'censor or withhold delivery of a particular letter.' . . . Notice and a reasonable chance to challenge the original official's decision satisfy due process." *Id.* (citing *Procunier*, 416 U.S. at 417-19). In *Vogt*, a letter was sent to the prisoner which lacked a return address. *Id.* at 184. The prison's policy at that time was to reject mail that lacked a return address and so Vogt's letter was rejected. *Id.* Six months later, defendant Vogt contacted the United States Postal Service reclamation center looking for a different mailing, and the Postal Service returned several items,

12

including the letter at issue. *Id.* Defendant Vogt alleged that "the prison rejected his mail without notice" and that he was complaining – not that the letter was refused – but that it was refused without the requisite notice to him. *Id.* at 185-186. On appeal, the Third Circuit concluded that consistent with the inmate's liberty interest in corresponding by mail, "when the prison rejected his letter, notification was required." *Id.* at 187.

The factual allegations of Mr. Walker's Complaint do not support a plausible claim grounded in Mr. Walker's liberty interest in corresponding by mail. In contrast to the factual allegations in *Vogt*, Mr. Walker concedes that he was notified of his incoming legal mail in all 25 instances he lists in his Complaint. (*See* ECF No. 1 ¶¶ 23-50.) In 22 of those instances, Mr. Walker received photocopies of the legal mail at issue.[6] (*See id.* ¶¶ 23, 30-50.) In the remaining three instances, Mr. Walker was notified that legal mail was sent to him and was offered photocopies but refused to sign the log and accept the photocopies. (*See id.* ¶¶ 24, 26, 28.) Unlike the prisoner in *Vogt*, Mr. Walker received notice at the time of each instance where that legal mail was sent to him and was later able to file grievances related to those instances. (*See id.* ¶ 53.) While Mr. Walker alleges that he was not informed that his legal mail would be returned to the sender in the three instances where he refused to sign the log, that degree of notice is not the type contemplated in *Vogt*. Rather, *Vogt* requires notice of the existence of the mail sent to the prisoner that was not otherwise being provided to him. Mr. Walker's ability to refuse receipt of the legal mail by not signing the log, demonstrates Mr. Walker had notice of the

---

[6] To be clear, nothing in this Memorandum should be construed to suggest that providing prisoners with photocopies of legal mail is an acceptable routine practice. *See Vega v. Mullen*, No. 16-cv-4620, 2018 WL 878802 (E.D. Pa. Feb. 14, 2018). The Court is merely noting that for purposes of Mr. Walker's specific due process claim, the receipt of photocopies of the legal mail clearly demonstrates that Mr. Walker was notified of the existence of that mail, unlike the prisoner in *Vogt* who had no reason to know that a letter sent to him was rejected by the prison.

existence of the legal mail at issue. In all other instances set forth in the Complaint, Mr. Walker received notice of the mail and obtained photocopies. Because Mr. Walker has failed to allege facts implicating his due process rights, the Court will dismiss Mr. Walker's Fourteenth Amendment due process claim pursuant to § 1915(e)(2)(B)(ii). *Cf. Hailey v. Wetzel*, No. 3:20-60, 2021 WL 6051446, at *10 (W.D. Pa. Dec. 20, 2021) (concluding that incident where prisoner's legal mail was returned to the sender did not implicate his due process under rights because prisoner received notice that his legal mail was returned and grieved the incident). Because it appears that any attempt to amend this claim would be futile, the Court will dismiss Count II with prejudice.

### D. Mr. Walker's First Amendment Free Speech Claim

Mr. Walker also alleges the 2018 Mail Policy violated his freedom of speech.[7] (*See* ECF No. 1 ¶¶ 54-62.) The Third Circuit Court of Appeals has explained that prisoners "do not forfeit their First Amendment right to use of the mails" and that a "pattern and practice of opening properly marked incoming [legal] mail outside an inmate's presence infringes communication

---

[7] Mr. Walker alleges in a broad, conclusory fashion that Defendants violated his First Amendment rights "by engaging in a pattern or practice of interfering with his access to the courts b[y] returning his legal mail to the sender instead of giving Mr. Walker his legal mail." (ECF No. 1 ¶ 61.) To the extent this singular statement could be construed as an attempt to allege a First Amendment access to the courts claim, the Court finds that Mr. Walker has not plausibly alleged such a claim. "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id.* Mr. Walker has not identified an underlying cause of action in which he lost a nonfrivolous and arguable claim sufficient to demonstrate actual injury. Accordingly, to the extent the Complaint could be understood to allege an access to courts claim, that claim will be dismissed pursuant to § 1915(e)(2)(B)(ii).

protected by the right to free speech." *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995), *abrogated in part by Oliver v. Fauver*, 118 F.3d 175 (3d Cir. 1997); *see also Taylor v. Oney*, 196 F. App' x. 126, 128 (3d Cir. 2006) (reaffirming holding in *Bieregu* that "prison officials impinge upon the First Amendment rights of prisoners when they open prisoners' legal mail outside the presence of the addressee prisoner"). To state a First Amendment claim for interference with a prisoner's legal mail, a plaintiff must allege that the interference was done according to a "pattern and practice." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) ("A state pattern and practice . . . of opening legal mail outside the presence of the addressee inmate . . . impinges upon the inmate's right to freedom of speech."). A prisoner may allege that actions were taken pursuant to a pattern or practice without the existence of a "blanket policy." *See id.* (distinguishing between "a pattern and practice" and an "explicit policy"). Prisoners need not allege or prove any "actual injury" beyond direct injury to their First Amendment right to use the mails. *Taylor*, 196 F. App'x at 128. Courts have found that mere isolated incidents of interference without evidence of an improper motive, are insufficient to establish a First Amendment violation. *See, e.g., Nixon v. Sec'y Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) ("[T]he District Court correctly determined that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a First Amendment violation."); *Beese v. Liebe*, 51 F. App'x 979, 981 (7th Cir. 2002) (dismissing First Amendment Claim based on allegations that four pieces of legal mail had been opened outside of inmate's presence, since the inmate presented no evidence that his legal mail had been intentionally

opened, and where the inmate merely speculated that the prison official intended to do so); *Gardner v. Howard*, 109 F.3d 427, 420-31 (8th Cir. 1997).

In *Thompson*, the court specifically found that a prisoner challenging the same 2018 Mail Policy challenged by Mr. Walker "plausibly alleged that the application of this policy to his legal mail violated his First Amendment freedom of speech." 2020 WL 7872629, at *9. As explained in *Thompson*, "the purpose of opening mail in an inmate's presence is to ensure that prison officials will not read the mail." *Id.* However, "[a] DOC practice of keeping a copy of an inmate's privileged mail presents the same risk to confidentiality as opening the mail outside the inmate's presence: the risk that DOC officials will read an inmate's legal mail, despite policies prohibiting such behavior." *Id.* While the 2018 Mail Policy, "required DOC officials to open legal mail in the inmates' presence, the policy to photocopy the legal mail and retain the original legal mail outside the inmates' presence presents a risk of chilling inmates' confidential, protected speech for fear that DOC officials will read the contents of the original communication." *Id.* As a result, the *Thompson* court concluded that the prisoner had "plausibly alleged that the 2018 DC-ADM 803 legal mail policy — specifically, the Defendants' creation of this policy or application of this policy to his mail from the Superior Court — infringed upon his freedom of speech." *Id.*

Mr. Walker's Complaint details 22 instances[8] where prison officials opened his legal mail in his presence but instead of providing Mr. Walker with the original documents, Defendants, acting pursuant to the 2018 Mail Policy, photocopied his legal mail and retained the original outside of his presence. Based on these factual allegations and consistent with the case law of its

---

[8] Of these 22 instances, 17 involved legal mail sent from a state or federal court, including at least one instance of mail sent to Mr. Walker specifically by this Court, while the remaining 5 instances involved legal mail sent from various attorneys. (*See* ECF No. 2 ¶¶ 23, 30-50.)

16

sister court, this Court finds that Mr. Walker has plausibly alleged that the application of the 2018 Mail Policy violated his First Amendment rights to freedom of speech. Accordingly, Count I of Mr. Walker's Complaint will be permitted to proceed and the Court will direct service of the Complaint on Defendants.

## IV. CONCLUSION

For the foregoing reasons, Mr. Walker will be granted leave to proceed *in forma pauperis*, and Counts II, III, and IV of his Complaint will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), (iii). Count I of the Complaint will be permitted to proceed and the Court will direct service on Defendants. Mr. Walker's Motion for a Case Management Conference will be denied without prejudice at this time. Mr. Walker may renew his request for a case management conference, if necessary, after a responsive pleading to the Complaint has been filed. An appropriate Order follows.

BY THE COURT:

/s/ Gene E.K. Pratter
_____
GENE E.K. PRATTER, J.